# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

RYAN FEIN; ANTHONY RIZZELLO;   :
CHRISTOPHER SALMIERI;     :
JOSHUA BERLIN; SHAWN BISHOP;  :
RYAN FITZPATRIK; FRANCIS IANNOTTA; :
JI KIM; MARC LANGLEY;     :
CHRISTOPHER MEEKER;     :
JASON NEWCOMER; JOHN SHALLOW; :
DAVID BARON; and ARNOLD DAVENPORT, :
              :
    Plaintiffs,     :
   v.          :   No. 5:16-cv-00660
              :
DITECH FINANCIAL, LLC,    :
              :
    Defendant.    :

_____

# O P I N I O N

**Plaintiffs' Unopposed Motion for Final Certification of the Settlement Class/Collective. Service Awards, and Final Settlement Approval, ECF No. 33 and Plaintiffs' Unopposed Motion for Attorneys' Fees and Reimbursement of Expenses, ECF No. 34 — Granted**

**Joseph F. Leeson, Jr.**           **September 26, 2017**
**United States District Judge**

   Plaintiffs Ryan Fein, Anthony Rizzello, Christopher Salmieri, Joshua Berlin, Shawn

Bishop, Ryan Fitzpatrik, Francis Iannotta, Ji Kim, Marc Langley, Christopher Meeker, Jason

Newcomer, John Shallow, David Baron, and Arnold Davenport, on behalf of a putative

class/collective and Defendant Ditech Financial, LLC have negotiated and agreed to a class and

collective settlement ("Settlement Agreement") that will resolve Plaintiffs' claims under the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 201-19; the Pennsylvania Minimum Wage Act, 43

Pa. Cons. Stat. § 333.101-15 ("PMWA"); and the Pennsylvania Wage Payment and Collection

Law, 43 Pa. Cons. Stat. § 260.1-12 ("WPCL").

This Court previously granted the parties' amended joint motion for preliminary certification of the class/collective and preliminary approval of the Settlement Agreement. ECF No. 32. Plaintiffs now present an unopposed motion for final certification of the settlement class/collective, final approval of the Settlement Agreement, and service awards to the named Plaintiffs. ECF No. 33. Plaintiffs also present a motion for attorneys' fees and expenses. ECF No. 34. For the reasons that follow, the Court grants both motions.

## I. BACKGROUND

On February 10, 2016, Plaintiffs initiated this lawsuit as a class/collective action against Defendant on behalf of a putative class of similarly-situated Loan Officers[1] employed by Defendant ("Class Members"). Plaintiffs allege that Defendant violated the FLSA, PMWA, and WPCL by failing to pay Plaintiffs and other similarly-situated current and former employees at a rate equal to or greater than 1.5 times their regular rate of pay for all hours in excess of forty worked in a single work week under the FLSA and PMWA, and by failing to pay certain wages earned and due under the WPCL.

Specifically, Plaintiffs allege that Defendant failed to include certain earnings in commissions and bonuses in its calculation of their "regular rate" of pay as required under the FLSA and PMWA, resulting in their being denied overtime compensation at a rate at least1.5 times their "regular rate" under the FLSA and PMWA. Compl., ¶¶ 94-97, 122-124, ECF No. 1. Additionally, Plaintiffs allege that Defendant unlawfully failed to pay them and all other similarly-situated Loan Officers bonuses which were due and owing under the WPCL. Compl., ¶¶ 30, 54-75, 109-118, ECF No. 1. Finally, Plaintiffs allege that Defendant unreasonably delayed the payment of overtime on certain monthly commissions, resulting in its liability to Class

---

[1] "Loan Officer" is a generic term for the positions of Mortgage Loan Agent, Consumer Home Loan Specialist, and Senior Consumer Home Loan Specialist. ECF No. 33-1, at 2.

Members for liquidated damages under the FLSA for the resulting delay. Plaintiffs have demanded damages, including unpaid compensation, interest, and liquidated damages.

After Defendant filed its Answer to Plaintiffs' Complaint, the parties agreed to stay the proceedings in this case and attend mediation to potentially resolve this matter. ECF No. 21. On August 31, 2016, the parties attended a full day's meditation with the Honorable Diane M. Welsh (Ret.) of JAMS, and ultimately reached an agreement to settle this Action on the terms set forth in the Joint Stipulation of Settlement and Release.[2] On January 15, 2017, the parties filed a joint motion to certify the class/collective for settlement purposes and for preliminary approval of the Settlement Agreement, class notice and opt-out form. ECF No. 30. By Order dated April 19, 2017, the Court granted preliminary approval to the settlement as fair, reasonable, and adequate. ECF No. 32, ¶ 7. The Court granted preliminary certification for settlement purposes only to the following Rule 23 Settlement Class ("State Law Class"):

> All Ft. Washington, Pennsylvania-based individuals employed by Defendant Ditech Financial, LLC or its related entities in the positions titled Mortgage Loan Agent, Consumer Home Loan Specialist, and/or Sr. Consumer Home Loan Specialist at any time from February 10, 2013 to September 9, 2016 who: (a) achieved over $60,000,000 in production in 2013, were awarded a 2013 Production Bonus and received payment for the first annual tranche of the bonus, and were subsequently denied payment for one or more annual tranches of the 2013 Production Bonus because they were not longer employed by Defendant at the time payment was due under the WPCL; and/or (b) did not receive overtime

---

[2]     The parties first provided the Court with a copy of the Joint Stipulation of Settlement and Release as an exhibit to their Joint Motion for Preliminary Approval, previously provided to the Court as Exhibit 1 to the parties' Joint Motion for Preliminary Approval. ECF No. 28, Ex.1. In response to concerns raised by the Court regarding the proposed class definition and opt-in mechanism the parties first proposed, as well as the availability of the proposed Joint Stipulation of Settlement and Release, the parties subsequently filed an Amended Joint Motion for Preliminary Approval, ECF No. 30, including a Revised Joint Stipulation of Settlement and Release, ECF No. 33, Ex. 2.  At the final hearing on the instant motion on September 13, 2017, a typo in the release provisions of the Settlement Agreement was discovered. Counsel corrected the error and filed a Joint Stipulation on September 19, 2017, to add the phrase ", which were asserted by Plaintiffs in this Action" after the phrase "Settlement Effective Date"  in Section 21(b)(2) of the Settlement Agreement.

compensation at 1.5 times their "regular rate" of pay for all hours worked over forty (40) in a workweek due to the exclusion of certain commission and/or bonus earnings from Defendant's calculation of their overtime rates under the PMWA.

*Id.* ¶ 2. In its April 19, 2017 Order, the Court also conditionally certified the following class of individuals for purposes of facilitating court-approved notice under 29 U.S.C. § 216(b) ("FLSA Collective"):

> All Ft. Washington, Pennsylvania-based individuals employed by Defendant Ditech Financial, LLC or its related entities in the positions titled Mortgage Loan Agent, Consumer Home Loan Specialist, and/or Sr. Consumer Home Loan Specialist at any time from February 10, 2013 to September 9, 2016.

*Id.* ¶ 9. The Court also appointed Ryan Fein, Anthony Rizzello, and Chris Salmieri as the Class Representatives, the Murphy Law Group, LLC as Class Counsel, and RG/2 Claims Administration LLC as Claims Administrator. *Id.* ¶¶ 4-6. The Court ordered the Class Notice to be sent to all Class Members via first class mail, along with an Exclusion/Opt-Out Form, to their last known address no later than May 1, 2017. *Id.* ¶ 10. The Court ordered that Class Members postmark their Exclusion/Opt-Out Forms requesting exclusion from the settlement, as well as any letters voicing an objection to the settlement, by July 3, 2017. *Id.* ¶ 9.

On May 1, 2017, the Claims Administrator mailed the Class Notice and Exclusion/Opt-Out Forms, where applicable, to 279 Class Members[3] based on data provided by Defendant. ECF No. 33-2, Ex. 5, ¶¶ 3-5. Class Members were informed in the Class Notice that the deadline for postmarking written objections and/or executed claim forms to request exclusion was July 3, 2017. ECF No. 33-2, Ex. 3 and Ex. 5. The Claims Administrator received no Exclusion/Opt-Out Forms and no objections to the settlement. ECF No. 33-2, Ex. 5, ¶¶ 6-7.

---

[3]       One hundred nineteen of the Class Members comprise the State Law Class, and an additional 160 Class Members bring claims solely under the FLSA and belong to the FLSA Collective. All 279 people are referred to collectively as the "Class Members."

## II.     THE PROPOSED SETTLEMENT AGREEMENT

The parties have agreed to settle this case for a total of $1,383,000.00 (the "Settlement Amount").  ECF No. 33-2, Ex. 2, at 3.  Of that amount, approximately $893,552.27 (the "Settlement Fund") will be distributed to Class Members; Plaintiffs seek the remaining amount for attorneys' fees, costs, and expenses, service awards for the Class Representatives and named Plaintiffs, and claims administration expenses.

Under the terms of the Settlement Agreement, Class Members will receive payments from the Settlement Fund, on a pro rata basis, proportional to the degree to which Defendant's alleged wage and hour violations impacted them economically. Tables A and B of Section 5 of the Settlement Agreement describe the specific apportionment of the Settlement Fund in detail. ECF 33-2, Ex. 2, at 3-4.  As described there, individuals who qualify for participation in both the State Law Class and FLSA Collective and who do not opt out with respect to their claims under state law will receive one settlement check as resolution of their claims under  Pennsylvania law ("State Law Settlement Check"), and one settlement check as resolution of their claims under the FLSA ("FLSA Settlement Check").[4]  By contrast, individuals who qualify for participation only in the FLSA Collective shall only receive an FLSA Settlement Check. Collectively, the two portions paid to Class Members will be referred to as the Class Members' "Settlement Award." The Settlement Award checks will remain valid and negotiable for a period of ninety (90) days from the date of the mailing and will thereafter  automatically be canceled if not cashed.  ECF No. 33-2, Ex. 4, at 3.

---

[4]     As discussed above, "State Law Class" refers to the 119 people bringing claims under the PMWA and WPCL, and "FLSA Collective" refers to the 160 people bringing claims under the FLSA.

Plaintiffs estimate that participating Class Members will receive amounts ranging from the minimum payment of $50.00 up to a maximum of approximately $22,000.00, with an average payout of approximately $3,200.00, which Plaintiffs believe represents a substantial percentage of the wages and overtime compensation which Class Members reasonably could expect to prove at trial.

## III. ANALYSIS

The parties ask the Court to certify the State Law Class and FLSA Collective and to approve the terms of the proposed Settlement Agreement simultaneously. To merit final certification, the State Law Class must satisfy the requirements of Federal Rules of Civil Procedure 23(a) and Rule 23(b). After certification, the Court reviews the terms of the Settlement Agreement for fairness. As to the State Law Class, the Court considers whether the Settlement Agreement's terms are "fair, reasonable, and adequate," pursuant to Federal Rule of Civil Procedure 23(e) and the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) and *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 148 F.3d 283, 317 (3d Cir. 1998). As to the FLSA Collective, the Court reviews the Settlement Agreement's terms to ensure that it is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" rather than a "mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012). Finally, the Court reviews the requested incentive award for the Class Representatives and named Plaintiffs and the request attorneys' fees and expenses.

<u>**Final Certification of the State Law Class and FLSA Collective**</u>

Because the requirements for final certification of the State Law Class and the FLSA Collective differ slightly, the Court discusses each in turn. The Court grants final certification to both.

**A.  Plaintiffs have met the requirements for certification of the State Law Class.**

A court may only grant final certification of a class action "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) *as amended* (Jan. 16, 2009) (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 161 (1982)); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc). For certification under Rule 23, the class must satisfy the prerequisites of Rule 23(a) and one of Rule 23(b)'s three subparts. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 309–10. The party seeking class certification "bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591 (3d Cir. 2012). In this case, the Court finds that the State Law Class satisfies the requirements for certification under Rule 23.

**1.  The State Law Class satisfies the Rule 23(a) requirements.**

Under Rule 23(a), Plaintiffs must demonstrate that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Although the first element, numerosity, does not require a specific minimum number of plaintiffs to maintain a suit as a class action, courts generally find that any number of potential

plaintiffs over 40 satisfies the first element of Rule 23(a). *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Here, the parties have confirmed that the State Law Class has 119 members. Because joining 119 individual plaintiffs in one lawsuit would be impracticable, the Class satisfies the numerosity requirement.

The second element, commonality, requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *In re Wafarin Sodium Antitrust Litig.*, 391 F.3d 516, 527-28 (3d Cir. 2004). Courts evaluating commonality ask "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). Here, the members of the State Law Class share common questions of fact: all members allege that Defendant failed to include certain earnings in the form of guaranteed commissions and production bonuses in its calculation of their "regular rate," and thus did not pay State Law Class Members overtime compensation at the required 1.5 times their regular rate for all hours worked over forty in a workweek. A substantial number of State Law Class Members also claim that Defendant failed to pay them one or more tranches of a production bonus which they had earned and which was due and owing within the meaning of the WPCL.

State Law Class Members' claims also implicate the same legal questions, including whether (1) State Law Class Members were entitled to overtime on commission for certain guaranteed commissions and/or production bonuses or whether those commissions and/or bonuses were "discretionary," and thus properly excludable from their "regular rate" under the PMWA; (2) whether Class Members "earned" the 2013 Production Bonus within the meaning of the WPCL by achieving over $60,000,000 in production in 2013; (3) whether the 2013 Production Bonus Agreement contained an unlawful forfeiture clause in violation of the WPCL;

and (4) whether Class Members were entitled to liquidated damages. These similar legal and factual issues clearly satisfy the commonality requirement of Rule 23(a)(2).

The third element requires that claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). "[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). Here, the same unlawful conduct equally affected the proposed Class Representatives, named Plaintiffs, and putative Class Members: all claim that Defendant's failure to properly and timely pay overtime compensation at a rate not less than 1.5 times their "regular rate," as well as its failure to pay them wages due and owing, violated their rights under the PMWA and WPCL. Thus, the class also satisfies the typicality requirement.

The fourth and final element of Rule 23(a) requires that the Court determine that the named Plaintiffs and class counsel "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The class members are adequately represented if (1) the interests of the class representative do not conflict with the class members' interests and (2) class counsel are experienced, vigorously prosecuted the action, and acted at arm's length from the defendant. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d at 532. Here, no improper conflict of interest exists between the Class Representatives and class counsel and any other member of the Class; all State Law Class Members will receive payments proportional to the degree Defendant's pay practices harmed them. Furthermore, class counsel has significant experience with state wage and hour class and FLSA collective actions,[5] reached settlement only after a thorough

---

[5]     ECF No. 34-2,  Ex. 3 and Ex. 3-A.

investigation of all claims against Defendant, and negotiated at arm's length from Defendant during a full-day mediation session. The named Plaintiffs and class counsel have protected the interests of the Class fairly and adequately.

Therefore, the proposed State Law Class satisfies the Rule 23(a) requirements.

**2. The class also satisfies the requirements of Rule 23(b)(3).**

Having satisfied Rule 23(a), the class must now satisfy one of the three subparts of Rule 23(b). Rule 23(b)(3), under which Plaintiffs seek final class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

As discussed above, the Class Representatives and the Class Members share core common issues of fact, specifically, Defendant's exclusion of certain commissions and bonuses from its calculation of Class Members' overtime rates under the PMWA and its refusal to pay Class Members the second and/or third tranches of their 2013 Production Bonus due to their no longer being employed at the time payment became due. Each Class Member also presents common legal issues under state law: whether Defendant was legally entitled to exclude those earnings in bonuses and commissions from its calculation of Class Members' "regular rate" under the PMWA, and whether Defendant unlawfully failed to pay Class Members tranches of their 2013 Production Bonus due to an unlawful forfeiture provision in violation of the WPCL. These common issues predominate over any idiosyncrasies of their individual cases and militate in favor of resolution by class action.

Furthermore, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See In re Wafarin Sodium Antitrust Litig.*, 391 F.3d at

533. The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." *Id.* at 534. In this case, the State Law Class satisfies the superiority requirement because of the considerable number of class members and the low value of claims in relation to the expenses of prosecuting a lawsuit. The alternative to this class action is 119 individual lawsuits for relatively small amounts of damages. These claims would prove infeasible for potential plaintiffs because litigation costs could dwarf potential recovery. By contrast, the class action vehicle "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." *Id.*; *In re Prudential Ins. Co. Am. Sales Practice Litigation Agent Actions*, 148 F.3d at 315-16.

The State Law Class therefore meets the requirements of Rule 23(b)(3) as well. Because the class complies with both Rules 23(a) and 23(b)(3), this Court grants final certification of the State Law Class.

**3. Class notice was the best notice practical.**

After final certification of the class, the Court must evaluate the adequacy of the notice given to potential class members. Federal Rule of Civil Procedure 23(c)(2)(B) governs notice to classes certified under Rule 23(b)(3) and requires that the Court direct to class members "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2), and where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practical.'" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974).

Here, the Class Members' names and addresses are easily ascertainable because Defendant previously employed all members of the Settlement Class. The Class Notice and Exclusion/Opt-Out Form was mailed to all 119 State Law Class Members, and the forms complied with the requirements of Rule 23.[6] ECF No. 33-2, Ex. 5. Therefore, the notice given to potential State Law Class Members complied with the requirements of Rule 23.

**B. The collective satisfies FLSA collective action standards under 29 U.S.C. § 216(b).**

The Court next turns to the issue of certification of the FLSA Collective. When an employer fails to comply with the FLSA's requirements, employees can pursue an action against the employer on "behalf of himself" and in a representative capacity for "other employees similarly situated." 29 U.S.C. § 216(b). This lenient standard is considerably "less stringent" than the proof required pursuant to Rule 20(a) for joinder or Rule 23 for class certification. *See Grayson v. KMart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996).

The Third Circuit has approved a two-stage approach to determine whether putative members of a proposed FLSA collective are "similarly situated." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012) (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). At the first stage, "the court makes a preliminary determination whether the

---

[6]     Rule 23 requires that the notice state the following in plain language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). The notice given satisfies these requirements. *See* ECF. No. 33-1, Ex. 4.

employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 192 (3d Cir. 2011). This stage requires only a "modest factual showing that the proposed recipients of opt-in notices are similarly situated." *Id.* at 192–93 (citation omitted). This Court found that Plaintiffs have made this modest factual showing that the potential Collective Members are similarly situated to the named Plaintiffs; therefore, the Court conditionally certified the FLSA Collective. ECF No. 32.

A plaintiff's motion for final certification triggers the second stage of the analysis, when the Court "makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). The Court may consider "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536–37 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007)). In short, the Court must find "some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Halle v. W. Penn Allegheny Health Sys.*, 842 F.3d 215, 226 (3d Cir. 2016) (citing *Zavala*, 691 F.3d at 538). It is Plaintiffs' burden to establish by a preponderance of the evidence that they satisfy the similarly situated requirement. *Zavala*, 691 F.3d at 537.

Plaintiffs have carried their burden in this case. First, the proposed FLSA Collective Members clearly had similar circumstances of employment, as all worked in essentially the same position at Defendant's offices in Fort Washington, PA, subject to the common payroll policies

and practices described above.[7] Additionally, FLSA Collective Members advance similar claims and seek the same relief: Plaintiffs contend that Defendant failed to factor in certain earnings in bonuses and/or commissions into its calculation of FLSA Collective Members' overtime rates and unreasonably delayed the payment of overtime on monthly commissions, which led to Defendant's failure to pay FLSA Collective Members at a rate at least 1.5 times their regular rate of pay for all hours worked over forty in a work week.

Accordingly, this Court's conditional finding, in its April 7, 2017 Order, that FLSA Collective Members are "similarly situated" under 29 U.S.C. § 216(b) stands.

## **Final Approval of the Proposed Settlement Agreement**

**C. The Proposed Settlement Agreement meets the requirements for final approval.**

Having granted certification of the State Law Class and the FLSA Collective, this Court now must evaluate the fairness of the proposed Settlement Agreement.

### **1. State Law Class Action**

After the Court determines that Rule 23(a) and (b)'s requirements are met for class certification—here, involving the state law claims—it must then "separately 'determine that the settlement is fair to the class under [Rule] 23(e).'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (alteration in original) (quoting *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009)). To approve the settlement proposal with respect to the state law claims under Rule 23(e)(2), the Court must find that it is "fair, reasonable, and adequate." The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court. *Girsh v. Jepson*, 521 F.2d 153, 156

---

[7]     Although the FLSA Collective Members will opt in by cashing the checks they will receive pursuant to the Settlement Agreement, *see* ECF No. 31, any FLSA Collective Member who opts in will share the characteristics discussed, and thus is "similarly situated" to the named Plaintiffs.

(3d Cir. 1975). However, when parties seek certification and approval of a settlement simultaneously, as the parties do here, the court must be "even more scrupulous than usual" when examining the fairness of the proposed settlement. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 534. In *Girsh*, the Third Circuit Court of Appeals outlined specific factors that a court should consider in determining the fairness of a proposed settlement. Because courts also use the *Girsh* factors in evaluating the fairness of settlements of collective actions under the FLSA, the Court applies the factors below to the state law and FLSA claims simultaneously.

### 2. FLSA Collective Action

To grant final approval to a FLSA collective action, the Court must determine that the proposed settlement of Plaintiffs' FLSA claims "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.' " *Cuttic v. Crozer–Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). A proposed settlement resolves a bona fide dispute if its terms "reflect a reasonable compromise over issues, such as . . . back wages, that are actually in dispute." *Lynn's Food*, 679 F.2d at 1354.

Here, the Settlement Agreement resolves a bona fide dispute between the parties. In its Answer, Defendant denied Plaintiffs' right to any recovery under the FLSA. ECF No. 2. The parties disagree on various legal issues, including whether Class Members' production bonuses were discretionary within the meaning of 29 U.S.C. § 207(e)(3), whether Defendant acted in good faith, whether Defendant's actions were willful, and whether Defendant unreasonably delayed the payment of overtime on monthly commissions.

Having determined that the Settlement Agreement resolves a bona fide dispute under the FLSA, the Court must conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employees and (2) the settlement furthers the FLSA's implementation in the workplace. *See Mabry v. Hildebrandt*, No. 14-5525, 2015 WL 5025810, at *2 (E.D. Pa. Aug. 24, 2015); *McGee v. Ann's Choice, Inc.*, No. 12-cv-2664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). As mentioned above, courts in the Third Circuit have considered the *Girsh* factors in evaluating whether a settlement is "fair and reasonable" under the FLSA, as they do in the state law class context. *Waltz v. Aveda Transportation & Energy Servs. Inc.*, No. 4:16-cv-00469, 2017 WL 2907217, at *3 (M.D. Pa. July 7, 2017); *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012) (noting courts' use of *Girsh* factors in FLSA context in absence of clear Third Circuit standards). Here, as discussed below, the *Girsh* factors favor approval of the proposed Settlement Agreement. Therefore, the Court finds that the proposed settlement of Plaintiffs' FLSA claims is fair and reasonable for the employees.

Lastly, the Court must consider whether the settlement frustrates the implementation of the FLSA in the workplace. The proposed Settlement Agreement here does not contain a confidentiality clause and thus avoids a common basis for rejecting a proposed FLSA collective settlement. *See, e.g., Mabry*, 2015 WL 5025810, at *2–3. Nor does the Settlement contain the sort of impermissibly broad release provisions that courts have found invalid. *See, e.g., Kraus*, 155 F. Supp. 3d at 532–33; *Bettger v. Crossmark, Inc.*, No. 13-2030, 2015 WL 279754, at *8–10 (M.D. Pa. Jan. 22, 2015). The "Release of Claims" section of the Settlement Agreement properly limits its reach to claims "which arose...against Ditech or any Releasee on or before the Settlement Effective Date, which were asserted by Plaintiffs in this Action." ECF

No. 31-2, Ex. 4, at 12.[8] Therefore, the Court finds that the Settlement Agreement's terms do not impermissibly frustrate the FLSA's implementation.

### 3. The *Girsh* factors demonstrate that the Settlement Agreement satisfies the fairness requirements for both the State Law Class Action and the FLSA Collective Action.

The Third Circuit Court of Appeals set forth specific factors in *Girsh* that a court should consider when assessing the fairness of a proposed settlement, which apply to both the state and federal claims here: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d at 157.[9]

---

[8] *See supra* Note 2.

[9] As Plaintiffs recognize in their brief, the Third Circuit Court of Appeals has stated that preliminary approval of a class action settlement "establishes an initial presumption of fairness when the court finds that (1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the settlement's proponents are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod . Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995). At least one court of this District has recognized that this presumption of fairness creates a paradox in light of the simultaneous *Wafarin Sodium* requirement of "even more scrupulous [review] than usual" for combined certification/settlement. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 760 n.4  (E.D. Pa. 2016).

Regardless, Plaintiffs have satisfied the requirements for the presumption of fairness. The parties negotiated at arm's-length over several months and during mediation. Class counsel reviewed thousands of pages of payroll documents and thoroughly investigated the Class Members' claims, which led to the discovery of additional claims. Class counsel has experience in state class action and FLSA collective action. ECF No. 34-2, Ex. 3 and Ex. 3-A. No class members objected. Therefore, the presumption of fairness applies.

The *Girsh* factors support approval of the settlement. The first factor, the complexity, expense, and likely duration of litigation, is neutral. Plaintiffs contend that a full trial would consume large amounts of time and resources for the parties and the courts, that Plaintiff would require depositions of Defendant's management and a sample of Class Members, and that trial would require extensive testimony and complicated determinations of the issue of damages. However, Plaintiffs point to complexities inherent in any litigation without demonstrating any uniqueness of this case. *See Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 761 (E.D. Pa. 2016) (finding the first *Girsh* factor neutral where there was no allegation of "any complexity unique to this case, and there were no dispositive motions filed or novel legal issues raised by the parties").

The second *Girsh* factor, the reaction of the class to the settlement, "attempts to gauge whether members of the class support the settlement." *In re Prudential*, 148 F.3d at 318. Of a combined group of 279 State Law Class and FLSA Collective Members who received notice of the settlement, none have objected or submitted requests for exclusion. ECF No. 33-1, Ex. 5, at ¶¶ 3-7. Therefore, this factor favors approval.

The third factor requires the Court to consider the stage of proceedings and the amount of discovery completed. Courts must determine "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537. In this case, the parties conducted significant discovery: Defendant provided Plaintiffs with thousands of pages of documents, including payroll data and other documents Plaintiffs specifically requested. Additionally, counsel engaged in various arm's-length negotiations, including a full-day mediation session. Counsel adequately appreciated the merits of Plaintiffs' claims, and this factor supports approval of the settlement.

The fourth and fifth *Girsh* factors consider the risk of establishing liability and damages at trial and "weigh the likelihood of success against the benefits of an immediate settlement." *Id.* Plaintiffs assert that trying this case would involve "significant risks to Class Members because of the fact-intensive nature of proving liability under both the FLSA and Pennsylvania's wage and hour laws." ECF No. 33-1, at 24. The Court notes that the parties did not file any dispositive motions. *See Altnor*, 197 F. Supp. 3d at 762 (finding that a lack of dispositive motions to uncover any "significant hurdles" to establishing liability or damages is relevant to fourth and fifth *Girsh* factors). Regardless, Plaintiffs contend that Defendant has various defenses available, including (a) that Class Members' production bonuses were "discretionary" and were thus properly excluded from the calculation of Class Members' overtime rates; (b) that Defendant and Class Members had an agreement that the 2013 Production Bonus was not considered "earned" unless Class Members remained employed with Defendant when payment became due; and (c) that Defendant acted in good faith in attempting to carry out its responsibilities under the FLSA/PMWA. *Id.* at 25. "The court must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their cause of action." *Lachance v. Harrington*, 965 F.Supp. 630, 639 (E.D. Pa. 1997) (citing *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D. Pa. 1995)). Therefore, the fourth and fifth factors weigh moderately in favor of approving the settlement.

The likelihood of maintaining class certification if the action were to proceed to trial, the sixth *Girsh* factor, weighs in favor of approval but deserves only minimal consideration. 521 F.2d at 157. "There will always be a 'risk' or possibility of decertification, and consequently the court can always claim this factor weighs in favor of settlement." *In re*

*Prudential*, 148 F.3d at 321. As such, in a settlement class, this factor becomes essentially "toothless." *Id.*

The seventh *Girsh* factor, Defendant's ability to withstand a greater judgment, is neutral. Plaintiffs cite to a single online news article from over a year ago discussing company restructuring and layoffs by Defendant. ECF No. 33-1, at 26. However, Plaintiffs cite no other evidence of Defendant's financial instability, and an isolated article hardly demonstrates that Defendant cannot support a greater judgment.

The eighth and ninth factors, the range of reasonableness of the settlement fund in light of the best possible recovery and the range of reasonableness of the settlement fund in light of all the attendant risks of litigation, ask the Court to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* The parties have agreed to a Settlement Amount of $1,383,000.00 which will be used for payment of Class Members' claims. Class counsel estimated the maximum recovery possible at trial and conclude that the Settlement Amount, without costs and fees deducted, gives Class Members (a) 100% of the unpaid overtime on commission they are owed plus an additional 50% in liquidated damages under the FLSA; (b) 100% of the unpaid tranches of the 2013 Production Bonus earned by Class Members under the WPCL; and (c) 20% of the estimated total exposure in "delay damages" under the FLSA for Defendant's delay in the payment of overtime on monthly commissions. ECF No. 33-2, Ex.

6. Excluding the "Delay Damages" claim under the FLSA,[10] even after the deduction of attorneys' fees, litigation expenses, the requested service awards, and class administration expenses, the Settlement Fund offers the Class Members a recovery of approximately eighty percent (80%) of the maximum amount potentially recoverable by Class Members in wages and overtime compensation. Class Members will receive payouts, on a pro rata basis, equivalent to approximately: (a) 60% of the amount owed in unpaid bonus tranches under the WPCL; (b) 100% of the overtime plus 30% in liquidated damages owed for failing to pay overtime compensation on certain commissions; and (c) 100% of the overtime owed for failing to pay overtime compensation on yearly production bonuses. ECF No. 33-2, Ex. 6. This is a substantial recovery within the range of reasonableness given the attendant risks of trial.

---

[10]     Plaintiffs' estimate of potential recovery is skewed downward by the "delay damages" figure. The Settlement Amount includes only 13% of the maximum estimated trial recovery for delay damages; including delay damages decreases the percentage of maximum recovery the Settlement Amount comprises from 80.45% to 48.99%. ECF No. 33-2, Ex. 6.
However, Plaintiffs themselves recognize that some element of wishful thinking may play into their estimate of maximum delay damages, or even the possibility of recovering of those damages at all. Plaintiffs describe their delay damages claim as "relatively novel" and state:

> Although the Plaintiffs believe their arguments to be well-grounded in the language of the FLSA regulations, they are unaware of any federal cases in which an employer has been held to be liable for liquidated damages for unreasonably delaying the payment of overtime on commissions, let alone where the employer ultimately paid the overtime thus owed simultaneously with the underlying commission.

ECF No. 33-1, at 28 n.15. Plaintiffs also recognize that, during mediation, Defendant provided substantial evidence explaining their reasoning in delaying calculation and payment of overtime on commissions, which could demonstrate unavoidable logistical barriers to more prompt payment or a reasonable good faith belief that Defendant's payroll methods complied with the FLSA, both grounds to reduce or eliminate delay damages recovery. *Id.*

The *Girsh* factors on the whole militate in favor of the Settlement Agreement.

Accordingly, this Court finds the terms to be "fair, reasonable, and adequate" under Fed. R.

Civ. P. 23(e)(2) and "fair and reasonable" under the FLSA. Therefore, the Settlement

Agreement meets all the requirements for approval of a state law class action under Rule 23

and a FLSA collective action, and this Court grants final approval.

**D.  The requested service awards are appropriate in this case.**

The Plaintiffs request that the named Plaintiffs receive an additional incentive award of

between $1,000 and $2,500 each: $2,500 to Class Representatives Ryan Fein, Anthony Rizzello,

and Chris Salmieri, and $1,000 to the remaining named Plaintiffs. Courts routinely pay an

incentive award to class representatives or named plaintiffs in wage and hour class/collective

actions to reward their service to the entire class. *Cullen v. Whitman Med. Corp.*, 197 F.R.D.

136, 145 (E.D. Pa. 2000). Factors courts use to evaluate the appropriateness of awards include

the financial, reputational, and personal risks to the plaintiff; the degree to which the plaintiff

was involved in discovery and other litigation responsibilities; the length of the litigation; and

the degree to which the named plaintiff benefitted as a class member. *Hall v. Best Buy Co.*, 274

F.R.D. 154, 173 (E.D. Pa. 2011).

The awards that Plaintiffs request fall within—if not below—"the range of

compensation" that courts have approved for individual incentive awards.  *See In re Shop-Vac*

*Mktg. & Sales Practices Litig.*, No. 4:12-md-2380, 2016 WL 7178421, at *4 (M.D. Pa. Dec. 9,

2016) (citing examples of incentive awards between $2,500 and $6,000). In this case, the

reputational risk the named Plaintiffs took by having their names attached to a class action suit

they brought against their employer particularly justifies an award. *See Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (en banc) (explaining that incentive

awards serve in part to compensate named plaintiffs for "the risks they incurred during the course of class action litigation"). Additionally, the Class Representatives and named Plaintiffs have participated actively in this litigation: they provided documents to class counsel, provided information concerning their experiences and Defendant's practices, supplied testimony and documents critical to investigation of the Class Members' claims, and made themselves available for the mediation. This involvement and personal risk justifies the awards which Plaintiffs seek.

**E.  The requested attorneys' fees are appropriate in this case.**

Plaintiffs seek $456,390.00 in attorneys' fees, equal to approximately 33% of the Settlement Fund, as well as $5,557.73 in litigation costs and expenses. The percentage-of-recovery method, which awards a fixed portion of the settlement fund to counsel, is the prevailing methodology used by courts in the Third Circuit in wage and hour cases. *Altnor v. Preferred Freezer Servs., Inc.*, 197 F. Supp. 3d 746, 765 (E.D. Pa. 2016). A district court should consider seven factors when analyzing a fee award in a common fund case: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005), *as amended* (Feb. 25, 2005); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

These factors justify the fees and costs requested. With respect to the first factor, the size of the fund created and number of people benefitted, "[a]s a general rule, as the size of a fund

increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp. Derivative Action Litigation*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002). Here, counsel's efforts led to a fund of $1,383,000.00 for the benefit of 279 people. As discussed above, this recovery reflects a substantial portion of the wages and overtime compensation which the Class Members could expect to prove at trial. And as discussed below, the percentage of recovery requested falls around the average awarded by courts evaluating this sort of case, which militates in favor of the award.

Second, the Court considers the presence or absence of objections to the fees requested. As discussed above, no potential Class Members have objected to the Settlement Agreement or the requested attorneys' fees and expenses. This factor favors approval of the fees as requested.

With respect to the third factor, the skill and efficiency of the attorneys, class counsel has substantial experience litigating class and collective action employment disputes. ECF No. 34-2, Ex. 3 and Ex. 3-A. Additionally, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re AremisSoft*, 210 F.R.D. at 132 (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000)). Counsel have obtained a sizeable recovery for the class/collective on a comparatively short timeline. Such skill merits the award of fees requested.

The fourth factor considers the complexity and duration of the litigation. The litigation began over a year and a half ago in February 2016. Although the parties have reached settlement before filing any dispositive motions, class counsel had to analyze the wage and hour data of 279 people, which involved complicated and time-consuming calculations of damages. *Compare Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012) (finding that the analysis of records for 112 plaintiffs to reach settlement

of wage and hour case was complex). Furthermore, preparation of this case involved research of complex legal and factual issues and preparation for a full day's mediation session that led to the favorable outcome for the settlement class. A percentage award of 33% appropriately compensates these efforts.

Next, the Court considers the risk of nonpayment and the amount of time devoted to the case by counsel. Class counsel took this case on a contingent basis, which creates a real risk of nonpayment. Additionally, class counsel spent 448.13 hours on this case, including review of employee wage and hour data and preparing for and attending the mediation session that led to the settlement. ECF No. 34-1, at 18.

Lastly, the Court compares the requested award with awards in similar cases. "In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry*, 2015 WL 5025810, at *4. Class counsel thus seeks a middle-of-the-road figure as compensation; in fact, courts often find a benchmark of one-third of the settlement fund appropriate. *See Altnor*, 197 F. Supp. 3d at 768–69 (reducing fee award from requested 45% of settlement fund to 33%); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 434 (E.D. Pa. 2001) (approving attorneys' fees amounting to 33% of $48 million settlement in securities class action after six years of litigation featuring extensive discovery and significant motion practice); *see also Grier v. Chase Manhattan Auto. Fin. Co.*, No. 99-180, 2000 WL 175126, at *8 (E.D. Pa. Feb. 16, 2000) (approving attorneys' fees amounting to one-third of the net settlement fund after deducting costs); *Creed v. Benco Dental Supply Co.*, No. 12-01571, 2013 WL 5276109, at *6 (M.D. Pa. Sept. 17, 2013) (determining that "an award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit"); *Bredbenner v. Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, at *18–19 (D.N.J. Apr. 8, 2011)

(approving an award of 32.6% of the settlement fund). This last factor weighs heavily in favor of approving the award. Therefore, this Court grants the attorneys' fees and costs as requested.[11]

## IV.     CONCLUSION

For the foregoing reasons, the Court certifies the State Law Class and FLSA Collective and approves the terms of the class/collective action Settlement Agreement as fair and reasonable.

This Court approves incentive awards in the amount of $2,500 to Class Representatives Ryan Fein, Anthony Rizzello, and Chris Salmieri, and $1,000 to the remaining named Plaintiffs.

This Court approves $456,390.00 in attorneys' fees and $5,557.73 in litigation costs and expenses to be paid to class counsel.

A separate Order shall issue.


BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge

---

[11]     Courts in the Third Circuit have awarded reimbursement of expenses adequately documented and reasonably incurred in the prosecution of a class action, including photocopying, telephone and fax charges, postage, messenger and express mail charges, and legal research charges. *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1255 (3d Cir. 1995). Class counsel incurred expenses in the amount of $5,557.73, including filing and delivery fees for the Complaint, a process service fee, copying expenses, and the fee for the JAMS mediation. ECF No. 34-2, Ex. 3. These expenses are adequately documented and the Court grants the request for reimbursement.